**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CHEN-CHIA LU,<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN,<br>Secretary of Homeland Security, et al.,<br><br>Defendants. | ) | Civil Action No. 26-1157 (RBW) |

**MEMORANDUM OPINION**

The plaintiff, Chen-Chia Lu, brings this civil action against the defendants—Markwayne Mullin, the Secretary of the United States Department of Homeland Security ("DHS"); Joseph B. Edlow, the Director of the United States Citizenship and Immigration Services ("USCIS"); and Alissa L. Emmel, the Chief of the DHS-USCIS Immigrant Investor Program Office ("IPO")—pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), and the Mandamus Act, 28 U.S.C. § 1361. See Plaintiff's Original Complaint for Writ of Mandamus – Immigration Action ("Compl.") ¶¶ 1, 11–13, ECF No. 1. The plaintiff alleges that the defendants have unlawfully and unreasonably delayed the adjudication of his Form I-562E Immigrant Petition, and seeks an order from this Court compelling the defendants to act on his application. See id. ¶¶ 34–35. Currently pending before the Court are the defendants' Motion to Dismiss, see Motion to Dismiss and Memorandum in Support Thereof ("Defs.' Mot."), ECF No. 3; as well as the plaintiff's Cross-Motion for Summary Judgment, see Plaintiff's Opposition to Defendants' Motion to Dismiss and Cross-Motion for Summary Judgment ("Pl.'s Cross-Mot."),

ECF No. 5. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant the defendants' motion and deny the plaintiff's cross-motion.

## I. BACKGROUND

### A. Statutory Background

"In 1990, Congress amended the Immigration and Nationality Act [("INA")], 8 U.S.C. § 1101 et seq., to create an employment-based visa program for noncitizens who invest in a job-creating enterprise." Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 334 (D.C. Cir. 2023) (citing Immigration Act of 1990, Pub. L. No. 101-649, § 121(b)(5), 104 Stat. 4978, 4989 (1990) (codified at 8 U.S.C. § 1153(b)(5)). This pathway, known as "the EB-5 immigrant-investor visa program[,] . . . is so named because it is the 'fifth employment-based visa category available to foreign nationals' under the [INA.]" Delaware Valley Reg'l Ctr., LLC v. U.S. Dep't of Homeland Sec., 106 F.4th 1195, 1197 (D.C. Cir. 2024) (quoting Mirror Lake Vill., LLC v. Wolf, 971 F.3d 373, 374 (D.C. Cir. 2020)). The statute provides that

> [v]isas shall be made available . . . to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise . . . in which such alien has invested . . . or, is actively in the process of investing, capital in an amount not less than . . . specified . . . which will benefit the United States economy by creating full-time employment for not fewer than 10 United States citizens, United States nationals, or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States[.]

8 U.S.C. § 1153(b)(5)(A)–(b)(5)(A)(ii).

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the plaintiff's Opposition to Defendants' Motion to Dismiss and Cross-Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 4; (2) the plaintiff's Exhibits in Support of His Cross-Motion for Summary Judgment, ECF No. 4-2; (3) the plaintiff's Statement of Material Facts As to Which There is No Genuine Issue, ECF No. 4-3; (4) the defendants' Reply in Further Support of Defendants' Motion to Dismiss and Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Defs.' Reply"), ECF No. 6; and (5) the plaintiff's Reply in Further Support of Cross-Motion for Summary Judgment ("Pl.'s Reply"), ECF No. 9.

One manner through which a noncitizen may "satisfy the EB-5 employment-creation requirement" is by participating in "the Regional Center Program[,]" which allows foreign investors to invest in "USCIS-approved business entities [known as regional centers] that work in specified geographic areas to facilitate the pooling of EB-5 investments" and "job-creation projects." Delaware Valley Reg'l Ctr., 106 F.4th at 1198 (citing Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1993, Pub. L. No. 102-395, § 610(a), 106 Stat. 1828, 1874 (1992); 8 C.F.R. § 204.6(m)(3)(i)). "As of 2023, there were 640 approved regional centers in the United States." Id. (citation omitted).

For noncitizens seeking an EB-5 visa through the Regional Center Program, the first step in the application process is to "petition to USCIS for classification as an EB-5 investor using Form I-526E[,]" and "demonstrate that he or she has invested at least $800,000 in a specific regional center project and satisfies other EB-5 requirements." Lorient Roxboro, LLC v. Mullin, No. 26-cv-00358 (CJN), 2026 WL 1383021, at *1 (D.D.C. May 18, 2026) (citing Hulli v. Mayorkas, 549 F. Supp. 3d 95, 98 (D.D.C. 2021)). If USCIS approves this petition, "the noncitizen proceeds to the second step: applying for conditional lawful permanent resident status." Da Costa, 80 F.4th at 336 (citing iTech U.S., Inc. v. Renaud, 5 F.4th 59, 61 (D.C. Cir. 2021)). "In other words, an approved petition makes the noncitizen 'eligible to stand in line for an immigrant visa number to be issued by the Department of State.'" Id. "In a final step, after approximately one year and nine months as a conditional lawful permanent resident, the noncitizen may apply to remove the conditional basis of [his or her] lawful permanent resident status." Id. (citing 8 C.F.R. § 216.6(a)(1)(i)).

**B. Factual Background**

The following allegations are derived from the plaintiff's Complaint unless otherwise specified. The plaintiff "is a national of Taiwan and is the Petitioner of a Form I-526E, filed with USCIS on or about March 22, 2024." Compl. ¶ 10. "The Petition is predicated on [the p]laintiff's capital investment of $800,000.00 . . . into New Commercial Enterprise, the NCE, formed to fund the development and construction of a new mixed-use project to be known as the Marriott Downtown L.A., which is expected to . . . [create] thousands of new, full-time positions for qualifying U.S. workers." Id. ¶¶ 21–23.[2]

Subsequent to his investment, the plaintiff alleges that he "properly filed [his] I-526E petition with USCIS along with substantial documentation relating to the [NCE] and [his] lawful source and path of investment funds." Id. ¶ 23; see generally id., Exhibit ("Ex.") A. (Plaintiff's I-526E Receipt Notice). On approximately March 25, 2026, two years following submission of the plaintiff's I-526E petition, "attorneys for [the p]laintiff sent an 'Escalate' inquiry to the IPO request[ing] status of adjudication of [the plaintiff's] Petition[.]" Id. ¶ 24; see generally id., Ex. B. (IPO Inquiry). Additionally, around March 25, 2026, the plaintiff's attorneys submitted an Ombudsman inquiry to USCIS, requesting status of adjudication of the plaintiff's I-526E petition. Id. ¶¶ 26-27; see generally id., Ex. C. ("Ombudsman Inquiry"). The plaintiff states that USCIS has not provided any response to either his I-526E petition, escalation request, or Ombudsman inquiry, and asserts that the defendants' delay in adjudicating his petition is "unreasonable" and has caused him "financial hardship by having his investment capital remain

[2] It is unclear to the Court whether the plaintiff alleges that he invested $800,000 into a new commercial enterprise that created more than ten qualifying full-time jobs, or if he alleges that he invested $800,000 in a regional center approved by USCIS. See Compl. ¶ 35 (alleging investment of "$800,000 or more [in] the Regional Center"); id. ¶ 79 (suggesting that the plaintiff seeks a visa through the "EB-5 Regional Center Program"). The Court need not resolve this seeming inconsistency because it is not material to the outcome of the pending motions in this case.

'at risk'[,] . . . [as well as] inordinate and unfair amounts of stress, expense, and hassle . . . affecting [his] mental and emotional health." Id. ¶¶ 28, 30–32.

The plaintiff brings two claims against the defendants. First, he asserts that the "[d]efendants' delay in adjudicating [the p]laintiff's petition is unreasonable" and violates the Administrative Procedure Act. Id. at 9 (emphasis omitted). Second, he alleges that he "is entitled to a writ of mandamus [under 28 U.S.C. §1361] to compel action on their I-526E Petition because an unreasonable amount of time has passed since it was filed." Id. ¶ 101.[3]

### C. Procedural Background

The plaintiff filed his Complaint on April 4, 2026. See generally Compl. On July 6, 2026, the defendants filed their motion to dismiss the plaintiff's claim. See generally Defs.' Mot. The plaintiff filed his opposition to the defendants' motion to dismiss and a cross-motion for summary judgment on July 20, 2026. See generally Pl.'s Opp'n. The defendants submitted their reply in support of their motion to dismiss and in opposition to the plaintiff's cross-motion for summary judgment on July 27, 2026. See generally Defs.' Reply. The plaintiff filed his reply in further support of his cross-motion for summary judgment on August 3, 2026. See generally Pl.'s Reply.

## II. STANDARDS OF REVIEW

### A. Motions to Dismiss Under Rule 12(b)(1)

"Federal [district] courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's

[3] The Complaint also contains a count titled "Equal Access to Justice Act." Id. at ¶ 102–04 (citing 28 U.S.C. § 2412; 17 U.S.C. § 504). This count does not appear to be an affirmative claim for relief, but rather, a request for reasonable attorney's fees and costs "[i]f [the p]laintiff prevails" in this lawsuit. Id. ¶ 104.

jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if it "lack[s] . . . subject matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). And, because "[i]t is to be presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that [this] court has subject matter jurisdiction, see Nurse v. Sec'y of Air Force, 231 F. Supp. 2d 323, 326 (D.D.C. 2002) (Walton, J.) (citations omitted).

In deciding a motion to dismiss based on lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001). Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation and internal quotation marks omitted). And the Court "need not accept bare legal conclusions nor unsupported inferences." Campaign Legal Ctr. v. Fed. Election Comm'n, No. 22-cv-3319

(CRC), 2024 WL 4263853, at *5 (D.D.C. Sept. 23, 2024) (citing Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)).

**B. Motions to Dismiss Under Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests whether a complaint has properly "state[d] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks and citation omitted). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. Finally, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## III. ANALYSIS

The plaintiff seeks a writ of mandamus under 28 U.S.C. § 1361 or an order under the APA compelling the defendants to adjudicate his I-526E petition. The defendants move to dismiss the plaintiff's claim pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing: (1) that this Court "lacks subject matter jurisdiction to compel agency action on his I-526E petition . . . because of the discretion provided in 8 U.S.C. § 1153(b)(5)(E)(ii), . . . [which allows] the Secretary of Homeland Security '[to] process [Form I-526E] petitions in [the] manner and order established by the Secretary[,]'" Defs.' Mot. at 1 (citations omitted); and (2) that the plaintiff's Complaint fails to state a claim upon which relief may be granted because "any delay [in the adjudication] here is not unreasonable as a matter of law," Defs.' Mot. at 9. The Court addresses these arguments in turn, concluding that the plaintiff's Complaint must be dismissed because the delay in adjudicating his I-526E petition is not unreasonable as a matter of law.[4]

### A. Whether the Court has Subject Matter Jurisdiction Over the Plaintiff's I-526E Petition Claims

Before the Court can consider the merits of the plaintiff's APA claim, the plaintiff must "assert[] that an agency failed to take a discrete agency action that it is required to take." <u>Norton v. S. Utah Wilderness All.</u>, 542 U.S. 55, 64 (2004) (emphasis omitted). Similarly, as to the plaintiff's mandamus claim, the plaintiff "must first establish that the agency [whose action he seeks to compel] has violated a crystal clear legal duty" and that he has "no other adequate means to attain the relief [he] desire[s]." <u>Pour v. Rubio</u>, No. 25-cv-573 (JEB), 2025 WL

[4] Given its ultimate conclusion that the plaintiff's Complaint fails to state a claim upon which relief may be granted, the Court will also deny the plaintiff's cross-motion for summary judgment.

2374559, at *3 (D.D.C. Aug. 14, 2025) (quoting In re Ctr. for Biological Diversity, 53 F.4th 665, 670 (D.C. Cir. 2022)).

Here, the defendants argue that the plaintiff's APA claim must fail because there is "no requirement that USCIS take the discrete action sought, namely, adjudication of his Form I-526E petition," Defs.' Mot. at 8, and contend that the plaintiff's mandamus claim is deficient because it "does not establish a duty to adjudicate the petition[,]" id. To support these propositions, the defendants cite two statutory provisions: first, 8 U.S.C. § 1153(b)(5)(E)(ii)(II), which states that the Secretary of Homeland Security "may process petitions in a manner and order established by the Secretary," and second, 8 U.S.C. § 1252(a)(2)(A)–(B)(ii), which provides that "no court shall have jurisdiction to review . . . any . . . decision or action of the . . . Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the . . . Secretary of Homeland Security." The defendants argue that these provisions divest the Court of subject matter jurisdiction over this matter because Congress's statutory authorization to the Secretary of Homeland Security that he "may process" I-526E petitions in any manner that he establishes, 8 U.S.C. § 1153(b)(5)(E)(ii)(II), entrusts the processing of those petitions to the Secretary of Homeland Security's discretion, thereby insulating that processing from judicial review under 8 U.S.C. § 1252(a)(2)(A)–(B)(ii). See Defs.' Reply at 2–3.

The defendants, however, have not cited any precedent from this jurisdiction to support their interpretation of 8 U.S.C. §§ 1252(a)(2)(A)–(B)(ii) and 1153(b)(5)(E)(ii)(II). See generally Defs.' Mot. at 8–9. And, it appears that members of this Court are divided on the issue of whether these provisions deprive the Court of jurisdiction over claims of unreasonably delayed EB-5 adjudications. Compare Rayan v. Mullin, No. 26-cv-824 (TNM), 2026 WL 2823582, at *5 (D.D.C. Sept. 21, 2026) (finding that 8 U.S.C. §§ 1252(a)(2)(A)–(B)(ii) and 1153(b)(5)(E)(ii)(II)

deprive this Court of jurisdiction), and Gupte v. Mullin, No. 26-cv-445 (TNM), 2026 WL 2924478, at *2 (D.D.C. Sept. 29, 2026) (same), with Huang v. United States Citizenship and Immigration Services, No. 26-CV-1627 (RCL), 2026 WL 3082696, at *3–4 (D.D.C. Oct. 15, 2026) (finding that 8 U.S.C. §§ 1252(a)(2)(A)–(B)(ii) and 1153(b)(5)(E)(ii)(II) do not deprive this Court of jurisdiction given "conflicting signals" in the statutes), and Camarena v. Mullin, 26-730 (JDB), 2026 WL 1864155, at *5 (D.D.C. June 29, 2026) (similar). Furthermore, while the D.C. Circuit has not yet addressed this question, at least two circuits have "sidestep[ed]" this jurisdictional issue, opting to resolve "similar unreasonable delay claims on the merits without ruling on the jurisdiction stripping issue," Rayan, 2026 WL 2823582, at *5 (citing Gupta v. Jaddou, 118 F.4th 475, 482 (1st Cir. 2024); Babaria v. Blinken, 87 F.4th 963, 976–80 (9th Cir. 2023)).

Given the lack of "clear, binding precedent foreclosing [the] plaintiff's position [that this Court possesses subject matter jurisdiction to address his claims,] . . . the assumption of reviewability permits consideration of the merits of [the] plaintiff's claims." Oystacher v. Rubio, et al., No. 25-cv-3276 (BAH), 2026 WL 1998762, at *5 (D.D.C. July 10, 2026) (citation omitted); see also Adan v. Blinken, No. 24-cv-591 (JDB), 2024 WL 5168521, at *2 n.5 (D.D.C. Dec. 19, 2024) ("[C]ourts may address the merits of a case when that course of action 'avoid[s] a doubtful issue of statutory jurisdiction." (quotation and internal quotation marks omitted)). The Court will therefore assume favorably to the plaintiff's benefit that his Complaint establishes this Court's subject matter jurisdiction over this case, and address the merits of his claims.

### B. Whether the Plaintiff Has Stated a Claim of Unreasonable Delay

The plaintiff's "claims under the APA and the Mandamus Act share the same standards for obtaining relief." Hajizadeh v. Blinken, No. 23-cv-1766 (LLA), 2024 WL 3638336, at *4

(D.D.C. Aug. 2, 2024). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns Comm'n ("TRAC"), 750 F.2d 70, 79 (D.C. Cir. 1984)). Courts in this Circuit analyze unreasonable delay claims using the six "TRAC" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Motevali v. Blinken, No. 23-cv-2133 (RC), 2024 WL 3580937, at *6 (D.D.C. July 30, 2024) (quoting TRAC, 750 F.2d at 80). "While not 'ironclad,' the TRAC factors provide 'useful guidance in assessing claims of agency delay.'" Hajizadeh, 2024 WL 3638336, at *4 (quoting In re Core Commc'ns, Inc., 531 F.3d at 855). And, "[t]he first and fourth factors are [the] most important in the visa context." Id. (quoting Da Costa, 80 F.4th at 340). Of significant importance, courts in this Circuit have consistently noted that "application of the TRAC factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay." Bega v. Jaddou, No. 22-cv-2171 (BAH), 2022 WL 17403123, at *4 n.2 (D.D.C. Dec. 2, 2022), aff'd sub nom. Da Costa, 80 F.4th 330.

#### 1. TRAC Factors One & Two

"The first and most important factor [for the Court to consider] is that 'the time agencies take to make decisions must be governed by a rule of reason.'" In re Core Commc'ns, Inc., 531 F.3d at 855 (quoting TRAC, 750 F.2d at 80). This factor is most commonly analyzed in tandem

with the second factor, which provides that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[.]" Fakhimi v. U.S. Dep't of State, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *7 (D.D.C. Oct. 23, 2023); see Hajizadeh, 2024 WL 3638336, at *4 ("The first two factors—requiring agencies to follow 'a rule of reason' related to their timeliness, and the influence of a congressionally imposed timeline—are typically considered together." (quoting Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020)).

"District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable." Ahmadi v. Scharpf, No. 23-cv-953 (DLF), 2024 WL 551542, at *5 (D.D.C. Feb. 12, 2024) (quoting Rahman v. Blinken, No. 22-cv-2732, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023)). "Conversely, courts in this jurisdiction have typically concluded that delays of two or three years are not unreasonable." Motevali, 2024 WL 3580937, at *6. "And indeed, recently, the [District of Columbia] Circuit found that a delay of four-and-one-half years was not unreasonable." Id. (citing Da Costa, 80 F.4th at 342).[5]

Here, the plaintiff argues that "over 24 months [—32 months as of the date of this Memorandum Opinion—] after the initial filing of [his p]etition, [the d]efendants have yet to adjudicate them or provide any meaningful feedback regarding their status" in violation of Congressional intent. Compl. ¶¶ 30, 70–71, 73. To determine the length of delay in immigration processing cases, courts in this Circuit "seem to focus on the delay up to the issuance of the [district court's] opinion." Brzezinski v. U.S. Dep't of Homeland Sec., No. 21-cv-376 (RC),

[5] While Ahmadi, Rahman, and Motevali discuss different types of visa applications than the EB-5 petition at issue in this case, courts have applied the principle that "delays of five years or more [are] 'generally' . . . unreasonable," while "two-to-three year [delays]" or even "four-and-a-half-year delay[s]" are not, to unreasonable-delay claims involving EB-5 visa applications as well. Park v. Edlow, No. 26-cv-504 (BAH), 2026 WL 2065339, at *6 (D.D.C. July 16, 2026); see also Da Costa, 80 F.4th at 339–42 (discussing EB-5 applications).

2021 WL 4191958, at *4 n.3 (D.D.C. Sept. 15, 2021). And here, the Complaint states that the plaintiff filed his I-526E petition on March 22, 2024, id. ¶ 23, approximately two years and eight months prior to the date of the issuance of this Memorandum Opinion. Although the Court is sympathetic to the plaintiff's concerns regarding this delay, in light of "the overwhelming trend within this [C]ircuit[,]" the Court must conclude that the defendants' "delay of approximately [thirty-two] months is not unreasonable." Motevali, 2024 WL 3580937, at *7. In other words, the first two TRAC factors, considered together, favor the defendants.

The plaintiff argues that the "[d]efendants' reliance on Da Costa is misplaced[,]" Pl's. Reply at 2, because Congress amended the INA in 2022 through the Reform and Integrity Act ("RIA"), see Pl.'s Opp'n at 4 (citing Pub. L. No. 117-103, div. BB, § 106(b), 136 Stat. 49, 1070, 1104). The plaintiff contends that "[t]he RIA under Section 106(b) [] set specific processing time goals [for processing immigration petitions,]" Pl.'s Opp'n at 2, and "mandated that USCIS aim for processing times of 120 days for high unemployment area[s,]" id. at 4. The Court is not persuaded, as "th[is] goal[]—placed in the U.S. Code's notes rather than the statutory text—[is] 'aspirational' rather than mandatory." Camarena, 2026 WL 1864155, at *7 (noting that this 120-day benchmark "does not mean that the agency lacks a rule of reason" and finding an "almost two year[]" delay not unreasonable); see also Aiteliyev v. Mayorkas, 717 F. Supp. 3d 67, 81 (D.D.C. 2024) ("Despite some changes at the margins, [] Da Costa's core holding continues to ring true: USCIS's policy for processing I-526 petitions follows a rule of reason."); Rayan, 2026 WL 2823582, at *5 (explaining that the "processing 'goal' speaks only to averages, not any particular adjudication . . . [and does not] impose an enforceable deadline for adjudicating [an] I-526E petition").

**2. TRAC Factor Four**

"The fourth TRAC factor, which is 'the effect of expediting delayed action on agency activities of a higher or competing priority,' is particularly important [for immigration documentation.]" See Hajizadeh, 2024 WL 3638336, at *5 (quoting Da Costa, 80 F.4th at 343). "Courts are generally hesitant to direct agencies as to which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[] all others back one space and produce[] no net gain.'" Motevali, 2024 WL 3580937, at *8 (alterations in original) (quoting In re Barr Lab'ys, 930 F.2d 72, 75–76 (D.C. Cir. 1991)). "In fact, the [District of Columbia] Circuit 'has refused to grant relief, even [when] all the other facts considered in TRAC favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" Id. (quoting Milligan, 502 F. Supp. 3d at 319).

Here, the plaintiff argues that adjudicating his petition would not unfairly prejudice other applicants because the defendants' own inventory management policy assigns petitions "pursuant to multiple statutory priorities and processing categories rather than a single [first in, first out ("FIFO")] queue." Pl.'s Opp'n at 7. The plaintiff argues that because there is not a "single universal FIFO queue," there is no "line" for him to "jump[.]" Id. However, even if there is no single FIFO queue, "assist[ing the plaintiff] . . . would likely impose offsetting burdens on equally worthy applicants that were equally wronged by the agency's delay[,]" Motevali, 2024 WL 3580937, at *8 (quoting Da Costa, 80 F.4th at 340) (internal quotation marks omitted), who are in the same sub-queue or "processing category" as the plaintiff, Pl.'s Opp'n at 7, which undoubtedly reflects a similar prioritization scheme to which the Motevali court was reluctant to

undermine, 2024 WL 3580937, at *7–8. Accordingly, the Court finds that the fourth TRAC factor weighs in the defendants' favor.

### 3. TRAC Factors Three & Five

"The third and fifth factors overlap[,]" and require the Court to consider "the impact on human health and welfare and economic harm, [as well as] the nature and extent of the interests prejudiced by the delay." Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005).

Here, the plaintiff alleges that the delay has caused him to "incur[] financial hardship by having [his] investment capital remain 'at risk[,]'" has left him with an "inability to coordinate [his] financial future," and "has placed an inordinate amount of stress on [the] [p]laintiff and [his] family, affecting [his] mental and emotional health." Compl. ¶ 31. The defendants argue that "[a]ny allegation that the delay [] in adjudicating the [] petition is thwarting [the p]laintiff's immigration to the United States, or harm arising therefrom, is completely speculative." Defs.' Mot. at 16. The defendants further argue that "such alleged harms regarding the uncertainty of [the p]laintiff's future are the 'sort of prejudice . . . inherent in the [adjudication] process." Id. (quoting Xu v. Cissna, 434 F. Supp. 3d 43, 54 (S.D.N.Y. 2020)).

Although the Court reiterates that it is sympathetic to the plaintiff's position and has no reason to doubt his representations, "without more facts suggesting otherwise, these harms[, standing alone,] do not threaten [the p]laintiff['s] physical health and wellbeing in a manner compelling enough to overcome [the defendants'] advantage on the more important factors." Hajizadeh, 2024 WL 3638336, at *6; see id. (finding that allegations of "severe emotional distress" and significant financial costs "spent on visa-related expenses" did "not threaten [the p]laintiff['s] physical health and wellbeing in a manner compelling enough to overcome [the defendant's] advantage on the more important factors"); Da Costa, 80 F.4th at 345 (concluding

that the third and fifth TRAC factors did not favor the plaintiffs where "they d[id] not, for example, allege that they [were] unable to access electricity, water, food, or shelter"). These factors, therefore, weigh in favor of the defendants.

#### 4. TRAC Factor Six

"The final TRAC factor considers whether the agency's bad faith caused the delay." Sawahreh v. U.S. Dep't of State, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). The plaintiff states that the defendants' "'inventory management' [policy] suggests an arbitrary and capricious intent to circumvent the law[]" and a "bad-faith effort to avoid [RIA] timelines[.]" Pl's. Opp'n at 8.[6] This, however, is a conclusory allegation unsupported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fakhimi, 2023 WL 6976073, at *11 (quoting Iqbal, 556 U.S. at 678).[7] "As TRAC directs, though, the lack of plausible allegations of impropriety does not weigh against [the plaintiff]. This factor is thus neutral and does not alter the Court's analysis." Palakuru v. Renaud, 521 F. Supp. 3d 46, 53, (D.D.C. 2021).

## IV. CONCLUSION

For the foregoing reasons, the Court must grant the defendants' motion to dismiss the plaintiff's claims and deny the plaintiff's cross-motion for summary judgment.

**SO ORDERED** this 18th day of November, 2026.[8]

---

[6] Along these same lines, the plaintiff also alleges that the "USCIS arbitrarily and intentionally increases EB-5 process times[,]" Compl. ¶ 51, that the "inexplicable slowdown of EB-5 related application processing times has no other explanation but USCIS purposefully decreasing its EB-5 application adjudication rates to prevent applicants from making status inquiries and to aid in defending against mandamus lawsuits[,]" id. ¶ 63, and suggests that pre-RIA I-526 petitions are being unduly favored over I-526E petitions, Pl's. Opp'n at 4–5.

[7] The plaintiff points to USCIS data indicating that the agency processed more pre-RIA I-526 petitions than I-526E petitions, see Pl.'s Opp'n at 4, but again, this information does not plausibly support the plaintiff's allegation that USCIS has acted in bad faith.

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

REGGIE B. WALTON
United States District Judge